NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0288n.06
Filed: April 27, 2006

No. 05-5025

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF KENTUCKY |
| CHARLES DIANGELO SAUNDERS, | ) | |
| | ) | **O P I N I O N** |
| Defendant-Appellant. | ) | |

BEFORE:   DAUGHTREY and McKEAGUE, Circuit Judges; and McCALLA, District Judge.*

**McCALLA, District Judge.** Defendant Charles Diangelo Saunders appeals from his conviction and sentence following a jury trial on one count under 21 U.S.C. §§ 841(a)(1) and 846 for conspiracy to possess with intent to distribute cocaine. The district court sentenced Saunders to the statutory mandatory minimum of 120 months' imprisonment.

Saunders appeals his conviction on the ground that the evidence was insufficient to support the jury's verdict. He challenges his sentence on two grounds: (1) the district court calculated his sentence based on prior convictions not submitted to the jury in violation of his Sixth Amendment rights; and (2) the district court should have held a hearing regarding his

---

* The Honorable Jon P. McCalla, United States District Judge for the Western District of Tennessee, sitting by designation.

1

ineffective assistance of counsel claim.[1]  For the reasons set forth below, we AFFIRM Saunders'

conviction and sentence.

## I. Background and Procedural History

On May 26, 2004, drug interdiction task force officers at the Greater Cincinnati/Northern

Kentucky International Airport intercepted and searched Dona Owens, a passenger arriving from

Los Angeles en route to Greensboro, North Carolina.  The officers discovered that Owens was

carrying approximately two kilograms of a substance which was later determined to be cocaine.

Owens told the officers that he was carrying the cocaine to give to an individual named "Dreads"

in Greensboro.  Owens further stated that Dreads would pick him up at the Greensboro airport.

At the direction of the officers, Owens called Dreads from the airport and told Dreads that he had

missed his connection and would take a later flight.  The officers contacted Drug Enforcement

Agency ("DEA") agents at the Greensboro Airport, who subsequently identified the defendant,

Charles Saunders, as the man named Dreads that Owens had described.  The officers at the

Cincinnati Airport instructed Owens to call Dreads again, but the DEA agents conducting

surveillance in Greensboro could not see whether Saunders was using his telephone at that time.

The agents approached Saunders, and he agreed to speak with them.  Saunders told the agents

that he had come to the airport to pick up his cousin, but upon further questioning, he recanted

and stated that his cousin was actually a close friend named "Little Scrap."  Saunders did not

know Little Scrap's real name, nor did he know where this individual lived.  Saunders was not

arrested at that time.

---

[1] These arguments were raised in a brief filed by Saunders' appellate counsel.  Saunders raised four additional issues
in a subsequent pro se brief.  The government responded to the issues raised in both briefs.

A grand jury indicted Saunders on June 9, 2004, in the Eastern District of Kentucky at Covington. The indictment charged Saunders with one count of conspiracy to distribute and possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine in violation of 21 U.S.C. § 841(a)(1), all in violation of 21 U.S.C. § 846. Saunders was convicted following a two-day jury trial. The district court sentenced Saunders under 21 U.S.C. § 841(b)(1)(B), which establishes a minimum sentence of ten years' imprisonment and an eight-year term of supervised release for an offender with a prior felony drug conviction. Saunders received the mandatory minimum sentence of 120 months' imprisonment to be followed by an eight-year term of supervised release.

## II. Discussion

### A. Sufficiency of the Evidence

Saunders contends that the government's evidence at trial was insufficient to sustain the jury's verdict. When reviewing the sufficiency of the evidence to support a criminal conviction, the "relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Wood, 364 F.3d 704, 716 (6th Cir. 2004)(citing Jackson v. Virginia, 443 U.S. 307, 319 (1979). "Circumstantial evidence is sufficient alone to sustain a jury's verdict." United States v. Reed, 141 F.3d 644, 651 (6th Cir. 1998).

Saunders was convicted of one count of conspiracy to distribute and possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. The elements of a charge of possession

3

with intent to distribute illegal drugs under 21 U.S.C. § 841(a)(1) are: "(1) the defendant knowingly, (2) possessed a controlled substance, (3) with intent to distribute." United States v. Coffee, 434 F.3d 887, 897 (6th Cir. 2006)(citations omitted). In order to prove conspiracy under 21 U.S.C. § 846, "the government must prove the existence of an agreement to violate the drug laws and that each conspirator knew of, intended to join, and participated in the conspiracy." United States v. Gaitan-Acevedo, 148 F.3d 577, 586 (6th Cir. 1998)(citing United States v. Pearce, 912 F.2d 159, 161 (6th Cir.1990)). There is no requirement that the government show that each defendant knew every member of the conspiracy or the full extent of the conspiracy. United States v. Lloyd, 10 F.3d 1197, 1210 (6th Cir. 1993). It is sufficient that the defendant knew that his conduct "was connected in some way to the success of the collective venture." Gaitan-Acevedo, 148 F.3d at 586 (citing United States v. Ghazaleh, 58 F.3d 240, 245 (6th Cir.1995)).

The evidence in this case was sufficient to support Saunders' conviction. Dona Owens testified that on May 26, 2004, he flew from Los Angeles to the Cincinnati/Northern Kentucky Airport with two kilograms of cocaine on his body. He testified that he was en route to Greensboro, North Carolina, where he had arranged to deliver the cocaine to Saunders. Owens also testified that he expected to stay at Saunders' home when he arrived in Greensboro and that he expected to be paid one thousand dollars at that time. Owens further described his apprehension by police officers at the Cincinnati Airport and his subsequent cooperation with them. In particular, Owens testified that he made two telephone calls to Saunders on his Nextel telephone at the officers' direction.

4

Additionally, Owens testified regarding his previous contacts with Saunders. He testified that he first met Saunders in January of 2004 and that he brokered drug deals for Saunders on six to eight subsequent occasions. Owens stated that he would buy drugs in California, and then he or someone else would transport those drugs to Saunders or to Saunders' partner Rico. Owens testified that Saunders would then sell the narcotics to individuals in North Carolina. Finally, Owens testified that Saunders or his partner paid for Owens' plane tickets to North Carolina, that he stayed with Saunders and his wife at Saunders' house in North Carolina, and that Saunders would pay him one thousand dollars after delivering the narcotics.

The government also called police officers, DEA agents, and representatives from Nextel and Delta Airlines to corroborate Owens' testimony. The government also introduced flight records and records of telephone calls between Owens and Saunders.

Viewing the evidence presented in the light most favorable to the government, the Court finds that a rational trier of fact could have found the essential elements of conspiracy to possess cocaine with the intent to distribute beyond a reasonable doubt. Wood, 364 F.3d at 716. Accordingly, the evidence was sufficient to convict Saunders, and we affirm his conviction.

**B. Sentence Enhancement**

Saunders next challenges his sentence under the Sixth Amendment. He contends that the district court improperly enhanced his statutory mandatory minimum sentence from five to ten years based on two prior convictions that were not submitted and proven to a jury. Under 21 U.S.C. § 841(b)(1)(B), the baseline mandatory minimum sentence of five years is increased to ten years if the defendant has a prior conviction for a felony drug offense.

We have previously addressed this issue and upheld the prior conviction exception to the Sixth Amendment in United States v. Gatewood, 230 F.3d 186 (6th Cir. 2000)(en banc).  In Gatewood, we recognized the continuing vitality of the Supreme Court's holding in Almendarez-Torres v. United States, 523 U.S. 224 (1998), which rejected a defendant's constitutional claim that his prior conviction must be treated as an element of his offense and thus proven to a jury.  230 F.3d at 192.  The Supreme Court reaffirmed the Almendarez-Torres exception in Apprendi, stating that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  Apprendi v. New Jersey, 530 U.S. 466, 490 (2000)(emphasis added).  The Apprendi Court described Almendarez-Torres as an "exceptional departure" from the general Sixth Amendment rule.  Id.  This Court has since held "that notwithstanding Apprendi, the Almendarez-Torres prior conviction exception [is] still good law."  United States v. Powers, 129 Fed. Appx. 942, 946 (6th Cir. 2005).  Accordingly, the district court did not violate Saunders' Sixth Amendment rights by increasing his statutory mandatory minimum sentence based on his prior convictions that were not submitted to the jury.

**C. Failure to Hold an Ineffective Assistance of Counsel Hearing**

Finally, Saunders contends that, in view of his complaints about his attorney at sentencing, the district court should have held an evidentiary hearing to determine whether Saunders was receiving ineffective assistance of counsel.  We note at the outset that only the issue of whether the district court erred in failing to hold an evidentiary hearing is before us, not

whether Saunders' counsel was actually ineffective.[2]  We review the denial of an evidentiary

hearing for abuse of discretion.  United States v. Brika, 416 F.3d 514, 529 (6th Cir. 2005).  A

district court abuses its discretion where it "relies on clearly erroneous findings of fact,

improperly applies the law or uses an erroneous legal standard."  United States v. Dixon, 413

F.3d 540, 544 (6th Cir. 2005).

In this case, the district court did not abuse its discretion by failing to hold an evidentiary

hearing.  While Saunders voiced several complaints about his attorney,[3] he never asked the

district court for a hearing.  See United States v. Ford, 986 F.2d 1423, *3 (6th Cir. Feb. 24,

1993)(Table)(finding that where defendant did not request a hearing and "failed to demonstrate

that any of his alleged potential defense witnesses or any of the documents could conceivably

have helped his case," the district court did not err by failing to hold a hearing).  Moreover, the

district court allowed Saunders numerous opportunities to be heard on his concerns about his

counsel's performance.  The district court also heard Saunders' attorney's responses to these

concerns.  The district court thoroughly responded to Saunders' complaints and addressed

Saunders' pro se objections to his presentence investigation report in a written order.  On this

record, we find that the district court adequately considered Saunders' claims and did not abuse

its discretion by not holding a hearing regarding ineffective assistance of counsel.

---

[2] Ineffective assistance of counsel claims are more properly raised on collateral review.  See United States v. Vasquez-Duarte, 59 Fed. Appx. 625, 626-27 (6th Cir. 2003)(citing United States v. Tucker, 90 F.3d 1135, 1143 (6th Cir. 1996))("Generally, ineffective assistance of counsel claims are not cognizable on direct appeal because the record is inadequate to permit review, and therefore such claims are more properly raised in a motion to vacate under 28 U.S.C. § 2255.").

[3] For example, Saunders alleged that he "didn't really have no help from [his attorney]," that he "ain't getting nothing done through [his attorney]," and that he had "written on here 'ineffective assistance of counsel.'"  Saunders also claimed that he had been unable to reach his attorney and that his attorney did not review the presentence investigation report with him.

**III. Conclusion**

For the foregoing reasons, Saunders' conviction and sentence are affirmed.[4]

---

[4] As noted above, Saunders also raised four objections to his conviction and sentence in a pro se brief: (1) the district court did not have jurisdiction; (2) the jury instructions were erroneous; (3) the indictment was deficient; and (4) his prior drug convictions were not felony convictions, and accordingly should not have been used to enhance his sentence. None of these objections are meritorious.