**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0415n.06
No. 19-3658

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Jul 17, 2020
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| RASHAWN D. WATSON, | ) | OHIO |
| Defendant-Appellant. | ) | |

BEFORE: MOORE, CLAY, and MURPHY, Circuit Judges.

MURPHY, Circuit Judge. Federal law prohibits certain categories of individuals from possessing firearms, including individuals who have been convicted of a felony. 18 U.S.C. §§ 922(g)(1), 924(a)(2). Before 2019, our court and most others had long held that this law's intent element required defendants to know *only* that they were in possession of a firearm. *See, e.g.*, *United States v. Conley*, 802 F. App'x 919, 922 (6th Cir. 2020). In *Rehaif v. United States*, 139 S. Ct. 2191 (2019), however, the Supreme Court clarified that defendants must *additionally* know that they fall within one of the categories of individuals who may not possess firearms. *Id.* at 2194. After *Rehaif*, therefore, those charged with being a felon in possession of a firearm must know both that they possessed the firearm and that they had previously been convicted of a felony.

This case arose before *Rehaif*. Rashawn Watson was indicted for, among other crimes, being a felon in possession of a firearm. He ultimately pleaded guilty. But neither his indictment

nor his plea agreement mentioned whether Watson knew of his status as a felon—as is now required by *Rehaif*. On appeal, Watson seeks to invoke that decision to overturn his guilty plea. Because we recently rejected a challenge largely identical to Watson's, *see United States v. Hobbs*, 953 F.3d 853, 856–58 (6th Cir. 2020), we affirm.

Three times in early 2018, Watson sold fentanyl at his tobacco business to a confidential informant. These controlled buys led investigators to get a warrant to search Watson's store, truck, and nearby stash house. Investigators found three firearms, ammunition, and illegal drugs.

An indictment charged Watson with three drug counts, *see* 21 U.S.C. § 841(a)(1), with being a felon in possession of a firearm, *see* 18 U.S.C. § 922(g), and with possessing a firearm in furtherance of a drug-trafficking crime, *see id.* § 924(c)(1). The felon-in-possession count specified that Watson had previously been convicted of three felonies and that he knowingly possessed three firearms and ammunition. This count did not specify that Watson knew that he had previously been convicted of those felonies.

In May 2019, shortly before the Supreme Court issued *Rehaif*, Watson pleaded guilty to all five counts. His plea agreement did not require him to admit that he knew of his felon status, but he did admit that he knowingly possessed the firearms and ammunition. During the plea colloquy, the district court likewise did not ask Watson to admit that he knew of his status as a felon at the time that he possessed the firearms.

At sentencing, the district court found that Watson qualified as a career offender under U.S.S.G. § 4B1.1. This career-offender designation meant that Watson's guidelines range was 262 to 327 months in prison. Varying substantially downward from that range, the district court sentenced Watson to 190 months in prison, followed by six years of supervised release. Although

Watson's sentencing occurred after *Rehaif*, he never asserted any type of *Rehaif* claim in the district court.

On appeal, Watson challenged both his career-offender enhancement and his felon-in-possession conviction. We have already granted the government's motion to dismiss Watson's career-offender claim because his plea agreement included an appeal waiver that barred him from asserting it. *See United States v. Watson*, No. 19-3658 (6th Cir. Mar. 3, 2020) (order). We thus need only consider Watson's *Rehaif* arguments. He contends that *Rehaif* requires us to vacate his felon-in-possession conviction for both jurisdictional and merits reasons. After Watson filed his opening brief, our decision in *Hobbs* rejected the same types of arguments. 953 F.3d at 856–58. *Hobbs* leads us to affirm in this case too.

1. *Jurisdictional Challenge*. According to Watson, the indictment's failure to allege the *Rehaif*-required element (that he knew of his status as a felon) deprived the district court of jurisdiction to convict him of a felon-in-possession offense. Not so. Based on *United States v. Cotton*, 535 U.S. 625 (2002), *Hobbs* already explained why a missing element in an indictment does not affect a federal court's subject-matter jurisdiction. *See* 953 F.3d at 856–57. The Supreme Court has repeatedly clarified in recent decades that the word "jurisdiction" has a narrow domain, referring to "the courts' statutory or constitutional *power* to adjudicate the case." *Cotton*, 535 U.S. at 630 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998)); *see, e.g.*, *Eberhart v. United States*, 546 U.S. 12, 16 (2005) (per curiam). Consistent with this caselaw, *Cotton* held that "defects in an indictment" are not jurisdictional because they do not deprive courts of their power to adjudicate a criminal case. 535 U.S. at 630. That power instead arises from a federal statute that gives district courts jurisdiction over "all offenses against the laws of the United States." 18 U.S.C. § 3231; *see Cotton*, 535 U.S. at 630–31.

*Hobbs* applied *Cotton*'s logic to a defective felon-in-possession indictment that omitted *Rehaif*'s knowledge-of-status element. 953 F.3d at 856–57. When doing so, *Hobbs* recognized that other courts had "rejected the notion that an indictment's failure to allege the 'knowledge-of-status' element required by *Rehaif* deprives the court of jurisdiction." *Id.* (citing *United States v. Balde*, 943 F.3d 73, 92 (2d Cir. 2019); *United States v. Burghardt*, 939 F.3d 397, 402 (1st Cir. 2019)). Since *Hobbs*, courts have continued to reject this notion. *See United States v. Maez*, 960 F.3d 949, 956 (7th Cir. 2020); *United States v. Espinoza*, __ F. App'x __, 2020 WL 2844542, at *1 (9th Cir. June 1, 2020) (mem.); *United States v. Moore*, 954 F.3d 1322, 1332–37 (11th Cir. 2020). Just as in *Hobbs* and these many other cases, any deficiency in Watson's indictment "did not deprive the district court of jurisdiction." 953 F.3d at 857.

In response, Watson asks us to revisit *Hobbs*. But a panel of this court may not overrule a previous panel's published opinion. Watson should direct any disagreement with *Hobbs* to our en banc court, *see, e.g.*, *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985), and he should direct any disagreement with *Cotton* to the Supreme Court, *see, e.g.*, *Agostini v. Felton*, 521 U.S. 203, 237 (1997).

2. *Merits Challenge*. Watson makes two *Rehaif* arguments on the merits. He initially asserts that the indictment's failure to allege *Rehaif*'s knowledge-of-status element rendered it defective because indictments must include all elements of an offense. *See United States v. Resendiz-Ponce*, 549 U.S. 102, 107 (2007). Watson next argues that his plea was unknowing and involuntary (and so unconstitutional) because the district court failed to inform him of this element and to ensure he knew of his status as a felon when he possessed the firearms. *See Bousley v. United States*, 523 U.S. 614, 618–19 (1998).

Watson did not raise these arguments in the district court, so we review them for plain error. *See Hobbs*, 953 F.3d at 857; *Conley*, 802 F. App'x at 922; *see also Maez*, 960 F.3d at 957. To prevail on plain-error review, Watson must identify "an '(1) error (2) that was obvious or clear, (3) that affected [his] substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings.'" *Hobbs*, 953 F.3d at 857 (citation omitted). As we did in *Hobbs*, we will resolve Watson's claims on the third (prejudice) prong of this plain-error test. "An error affects a defendant's substantial rights if there is a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Id.* (quoting *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016)) (internal quotation marks omitted). This test thus requires Watson to show "a reasonable probability that, but for the alleged failure to inform him of [*Rehaif*'s] knowledge-of-status element, he would not have entered the plea." *Id.* (quoting *United States v. Dominguez-Benitez*, 542 U.S. 74, 76 (2004)) (alteration omitted). A defendant may satisfy this burden by pointing to "contemporaneous evidence suggest[ing] that he would have rejected the plea deal[.]" *Id.*

Watson does not make this showing. On appeal, he has not even argued that he would have stood trial if the government had to prove that he knew of his felon status, nor has he pointed to any contemporaneous evidence suggesting that he would have done so. Moreover, as in *Hobbs*, "[p]utting the government to its burden of proof would have cost [Watson] the potential benefit of his plea without gaining him anything." *Id.* at 858 (alteration and citation omitted). Thus, he does not show a reasonable probability that the outcome of the proceeding would have been different absent the *Rehaif* error.

Watson's response does not change things. He cites a footnote from *Dominguez-Benitez* suggesting that an unconstitutional guilty plea without a plea colloquy explaining the rights that a

defendant was waiving could not "be saved even by overwhelming evidence that the defendant would have pleaded guilty regardless." 542 U.S. at 84 n.10 (discussing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969)). Relying on this footnote, the Fourth Circuit has held that a district court's failure to notify a defendant of *Rehaif*'s knowledge-of-status element at a plea hearing qualifies as "structural error" that automatically meets the plain-error test's prejudice prong. *See United States v. Gary*, 954 F.3d 194, 202–07 (4th Cir. 2020). In *Hobbs*, however, we held that a defendant who pleads guilty must show prejudice from a district court's failure to explain *Rehaif*'s knowledge-of-status element. *See* 953 F.3d at 857–58. We nowhere suggested that such a failure could qualify as structural error. *Id.*; *cf. Ruelas v. Wolfenbarger*, 580 F.3d 403, 410–11 (6th Cir. 2009); *United States v. Stewart*, 306 F.3d 295, 318–23 (6th Cir. 2002). Watson's argument is incompatible with *Hobbs*.

In addition, most other circuit courts agree with *Hobbs*'s approach. Several have expressly rejected the argument that a district court's failure to notify a defendant of *Rehaif*'s knowledge-of-status element at a plea hearing counts as structural error. *See, e.g.*, *United States v. Coleman*, 961 F.3d 1024, 1028–30 (8th Cir. 2020); *United States v. Trujillo*, 960 F.3d 1196, 1201–08 (10th Cir. 2020); *United States v. Hicks*, 958 F.3d 399, 401 (5th Cir. 2020). Others have, like *Hobbs*, rejected *Rehaif* arguments under the prejudice prong of the plain-error test. *See United States v. McLellan*, 958 F.3d 1110, 1120 (11th Cir. 2020); *United States v. Williams*, 946 F.3d 968, 973–74 (7th Cir. 2020); *Burghardt*, 939 F.3d at 403–05.

We affirm.